923 A.2d 1111

COMMONWEALTH of Pennsylvania, Appellee,

v.

Michael YUHASZ, Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 4, 2006.

Decided May 31, 2007.

J. Michael Farrell, Esq., for Michael Yuhasz.

William George Young, Esq., Philadelphia District Attorney's Office, Patricia C. Broscius, Esq., John Michael Morganelli, Esq., Easton, for Commonwealth of Pennsylvania.

Stuart B. Suss, Esq., Thomas W. Corbett, Jr., Esq., PA Office of Attorney General, West Chester, for Attorney General of Pennsylvania.

BEFORE: CAPPY, C.J., and CASTILLE, SAYLOR, EAKIN, BAER and BALDWIN, JJ.

## *OPINION*

Chief Justice CAPPY.

The Court granted allocatur in this case to determine whether the sentence imposed pursuant to Pennsylvania's indeterminate sentencing scheme, which was within the statutory maximum but exceeded the aggravated range of the sentencing guidelines, violates the Sixth Amendment under

the United States Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). For the following reasons, we hold that it does not and thus, the sentence imposed by the trial court is affirmed.

Appellant was arrested and charged with twenty-seven counts of indecent assault, seventeen counts of involuntary deviate sexual intercourse, ten counts of aggravated indecent assault, one count of corruption of minors and ten counts of statutory sexual assault for engaging in a series of sexual encounters with a fourteen-year-old girl. The acts charged took place over the course of approximately one year.

Appellant entered into a negotiated guilty plea to one count of statutory sexual assault, 18 Pa.C.S. § 3122.1, a felony of the second degree. Such felonies carry a maximum sentence of ten years in prison. 18 Pa.C.S. § 106(b)(3). Pursuant to Pennsylvania's sentencing guidelines ("Sentencing Guidelines" or "Guidelines")[1], 204 Pa.Code § 303.1 *et seq.*[2], the offense gravity score for one count of statutory sexual assault is seven. 204 Pa.Code § 303.15. Appellant had a prior criminal record score of zero. Thus, the Sentencing Guidelines set forth a standard range minimum sentence of six to fourteen months. See, Basic Sentencing Matrix, 204 Pa.Code § 303.16.

On October 1, 2004, the trial court held a sentencing hearing at which testimony was presented by family members of both the victim and Appellant. After considering the testimony, the court sentenced Appellant to twenty-four to sixty months in prison, a period well within the statutory limit of ten years, but outside the range recommended by the Guidelines. The court explained the longer sentence by citing to the circumstances of the case; that the victim was only fourteen years old, while Appellant was in his mid-thirties; that Appellant was a confidant of the victim and her family; that the victim

1. The classification and mechanics of Pennsylvania's sentencing guidelines will be explored more fully *infra*.

2. The Pennsylvania Commission on Sentencing amended the Sentencing Guidelines on February 9, 2005, with an effective date of June 3, 2005. The provisions of the Guidelines germane to Appellant's sentence, as well as the larger issues discussed herein, are unchanged by the 2005 amendments.

described the sexual acts as "coarse"; and the adverse psychological effect to the victim.

Appellant lodged an appeal with the Superior Court challenging the legality of his sentence pursuant to the United States Supreme Court's holdings in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), which, he argued, preclude a judge from imposing any sentence greater than the Sentencing Guidelines' standard range unless the reasons for the enhancement are established by a jury beyond a reasonable doubt. He contended that the trial judge erred by sentencing him outside the Guidelines based on facts that he did not specifically plead to, such as the protracted nature of the relationship and the coarseness of the acts. The Superior Court affirmed the sentence in a memorandum opinion. It held that *Blakely* does not apply to Pennsylvania's indeterminate sentencing guidelines. Appellant then petitioned this Court for review.

■ This Court issued a limited grant of allocatur on one question:

> Whether the sentence imposed in this case pursuant to Pennsylvania's indeterminate sentencing scheme, which was within the statutory maximum but exceeded the aggravated range of the Sentencing Guidelines, violates the Sixth Amendment to the United States Constitution in light of the U.S. Supreme Court's decision in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), because the sentencing judge relied upon conduct not admitted in petitioner's guilty plea?

As this is a pure question of law, our standard of review is *de novo*. *Buffalo Township v. Jones*, 571 Pa. 637, 813 A.2d 659, 664 n. 4 (2002). Our scope of review is plenary. *Id.*

■ Appellant argues that while the general scheme of Pennsylvania's indeterminate system is constitutional, the Sentencing Guidelines run afoul of the Sixth Amendment to the extent that they allow a sentencing judge to depart from the recommended ranges based on facts not found by a jury or

admitted in a plea. He claims that the standard sentencing range, not the statutorily-prescribed maximum sentence, is the actual "statutory maximum" under *Blakely* for Sixth Amendment purposes because it is the maximum sentence that a defendant may receive without additional fact-finding by the judge. Like the defendant in *Blakely,* he argues that he was entitled to no greater than the standard range under the Sentencing Guidelines. Thus, in order to sentence him beyond the range recommended in the Guidelines, the facts supporting the enhancement must be found by a jury. Because the factors explained by the judge went beyond those admitted to in his plea, he received more punishment than he was entitled to based upon judicially-determined facts. Thus, he contends that his sentence is illegal and should be vacated.

The Commonwealth responds that the trial court did not violate Appellant's Sixth Amendment rights by sentencing him outside of the recommended range of the Sentencing Guidelines. The sentence actually imposed was within the ten-year statutory maximum sentence for felonies of the second degree. The Commonwealth points out that in Pennsylvania's indeterminate, discretionary sentencing scheme, the statutory maximum is the guidepost for *Blakely* standards. Any enhancement made by a trial judge will affect only the minimum sentence, not the statutory maximum. As such, this does not implicate the concerns addressed in *Blakely.* The Commonwealth also argues that the United States Supreme Court in *Blakely* specifically declared that the Sixth Amendment has no impact on indeterminate sentencing schemes. Further, in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Court held that sentencing schemes that are merely advisory will not violate the Sixth Amendment as explained by *Blakely.* As such, the Commonwealth urges this Court to affirm the trial court's judgment of sentence.

Before proceeding to the analysis of the relevant precedent of the United States Supreme Court, it is important to set forth the terminology employed in describing sentencing systems. First, sentencing systems are either determinate or indeterminate. Indeterminate systems feature discretionary

parole release, whereas determinate schemes do not. Steven L. Chanenson, *The Next Era of Sentencing Reform*, 54 Emory L.J. 377, 382 (2005). In indeterminate systems, the judge most often will impose a sentence with two numbers, the earliest time that the defendant will be eligible for discretionary parole release and the latest date upon which the defendant may be released from confinement or parole supervision. 54 Emory L.J. at 385. Determinate sentences take the form of a single release date.

Sentencing schemes may also be discretionary or nondiscretionary. A discretionary system permits the judge to choose the sentence from a statutory range of punishments, whereas nondiscretionary systems require the imposition of a particular legislatively determined sentence for the particular type of offense. *Id.* at 384–85, 124 S.Ct. 2531.

Finally, sentencing schemes may be guided or unguided. An unguided system leaves the choice of which sentence to impose to the judge, bounded only by the statutory maximum. *Id.* at 384, 124 S.Ct. 2531. Guided systems employ sentencing guidelines that set forth ranges of sentences crafted to the type and nature of the offense. *Id.* Further, sentencing guidelines may be mandatory (sometimes referred to as presumptive), requiring a judge to sentence within the prescribed range unless specified factors are present, or voluntary, providing only advisory guidance posts as to what sentence to impose.

In recent years the United States Supreme Court has addressed a series of cases exploring the interplay between the Sixth Amendment's right to a jury trial and the various sentencing schemes employed by the states and the federal government. The first case in this line was *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi* the Court struck down a portion of the New Jersey hate crimes statute that provided for an enhancement of a criminal sentence if a trial judge found, by a preponderance of the evidence, that the defendant committed the crime with the purpose to intimidate a person or group based on enumerated characteristics, such as race. Apprendi was

charged with a variety of crimes for discharging a gun into the home of an African–American family that had recently moved into his neighborhood. He pled guilty to two counts of possession of a firearm for an unlawful purpose and one count of unlawful possession of an antipersonnel bomb. These crimes carry a statutory penalty range of 5 to 10 years and 3 to 5 years, respectively. At sentencing, the judge found by a preponderance of the evidence that Apprendi's crimes were motivated by a racial bias. As such, pursuant to the hate crime enhancement, the judge sentenced Apprendi to 12 years of imprisonment for one count of possession of a firearm for an unlawful purpose and shorter concurrent sentences for the other two charges.

On appeal, the United States Supreme Court overturned Apprendi's sentence and struck down the portion of New Jersey's hate crimes law that allowed the enhancement of a defendant's penalty based on judicial fact-finding. The Court explained: "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribed range of penalties to which a criminal defendant is exposed. It is equally clear that such facts must be established by proof beyond a reasonable doubt." *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348. Thus, any factor, except for the existence of a prior conviction, that increases an individual's potential maximum sentence is within the purview of the jury, not the court, to establish.

Four years later, in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the United States Supreme Court applied its holding in *Apprendi* to a case in which, as here, the defendant was sentenced above the range outlined by the sentencing guidelines but within the prescribed statutory maximum penalty. Blakely was charged with first degree kidnapping for the abduction of his estranged wife. He entered into a negotiated plea of guilty to the lesser charges of second degree kidnapping involving domestic violence and use of a firearm, felonies carrying a statutory maximum penalty of ten years in prison. Washington's sentencing guidelines provided a standard range of 49 to 53

months. A judge was permitted under the guidelines to impose a sentence above the standard range only if he found "substantial and compelling reasons justifying an exceptional sentence." *Blakely*, 542 U.S. at 299, 124 S.Ct. 2531 (quoting Wash.Rev.Code Ann. § 9.94A.120(2)). The guidelines provided a non-exhaustive list of factors that justified a departure from the recommended range. Further, any factor used in aggravation could not be a factor already considered in calculating the standard range. *Id.* (citing *State v. Gore*, 143 Wash.2d 288, 21 P.3d 262, 277 (2001)).

The judge imposed a sentence of 90 months, 37 months beyond the standard maximum recommended by the sentencing guidelines. He justified the sentence on the ground that the petitioner had acted with "deliberate cruelty," a statutorily-enumerated ground for aggravation. *Blakely*, 542 U.S. at 300, 124 S.Ct. 2531. Blakely appealed, arguing that the judge violated *Apprendi* by enhancing his sentence based on "deliberate cruelty," a factor which he did not admit in his plea. Blakely contended that lacking such admission, it is the jury, not the judge that must establish aggravating factors. The State of Washington countered that *Apprendi* was not implicated as the sentence imposed was still under the statutory maximum of ten years in prison.

The Supreme Court struck down the sentence as violative of the Sixth Amendment as interpreted by *Apprendi*. The Court held that the "statutory maximum" for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant. *Blakely*, at 303, 124 S.Ct. 2531. Thus, "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings." *Id.* at 303–04, 124 S.Ct. 2531 (original emphasis). Under the Washington guidelines, the judge was *required* to impose a sentence within the prescribed range *unless* there were substantial and compelling reasons to depart therefrom. Thus, the relevant statutory maximum under the Washington guidelines for Sixth Amendment purposes was the top sentence prescribed by the

sentencing guidelines. The Court explained that the sentence violated *Apprendi* because absent the judicial finding of deliberate cruelty, the trial court was required by Washington's sentencing guidelines to impose a sentence within the prescribed range. *Id.* at 304, 124 S.Ct. 2531. By exceeding the guidelines' range, the court effectively imposed a sentence beyond the statutory maximum.

Most recently, the Supreme Court addressed the constitutionality of the federal sentencing guidelines in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).[3] The federal sentencing guidelines were nearly identical to the Washington guidelines addressed in *Blakely*. Like the Washington guidelines, the federal government employed a determinate sentencing scheme wherein the guidelines prescribed a range from which the judge was *required* to choose the sentence. Departure from the prescribed range was only permitted if the judge found aggravating or mitigating factors not already considered by the guidelines by a preponderance of the evidence. The government contended, however, that despite the similarities, *Blakely* should not apply as the federal guidelines were promulgated by the Federal Sentencing Commission, rather than Congress. The majority explained that this distinction has no constitutional significance as to the Sixth Amendment issue. *Booker*, 543 U.S. at 237, 125 S.Ct. 738. The Court concluded that the federal guidelines did not pass constitutional muster.

In *Booker*, the Court produced two 5–4 majority opinions. The first majority, authored by Justice John Paul Stevens, addressed the substantive merits of the appeal. The second majority opinion, authored by Justice Stephen Breyer, addressed the proper remedial measures to bring the guidelines within the confines of the Sixth Amendment.

In its substantive opinion, the Court held that like the Washington guidelines struck down in *Blakely*, the federal guidelines violated the Sixth Amendment. The Court explained that merely allowing a judge to depart from the range

---

3. *Booker* was consolidated with *United States v. Fanfan,*

specified by the sentencing guidelines does not in itself create a constitutional problem, provided that the departure is within the statutory maximum sentence. *Booker*, 543 U.S. at 234, 125 S.Ct. 738. The problem with the federal guidelines was that in most cases, as a matter of law, departure is not permitted. *Id.* In such cases, the district court was bound to impose a sentence within the range specified by the guidelines. *Id.* Due to the mandatory nature of the federal guidelines, the effective statutory maximum for *Apprendi* purposes was the maximum range prescribed by the guidelines, not the statutory maximum of the offense. Thus, like in *Blakely*, the federal guidelines were found to be in violation of the Sixth Amendment inasmuch as they allowed a judge to depart from the prescribed sentencing range based upon judicially-established facts.

The Court explained that the key to its determination was that the federal guidelines were mandatory. It stated:

> If the guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment. We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented in these cases would have been avoided entirely if Congress had omitted from the SRA the provisions that make the guidelines binding on district judges; it is that circumstance that makes the Court's answer to the second question presented (the question of remedy) possible. For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant.

*Booker*, 543 U.S. at 233, 125 S.Ct. 738 (internal citations omitted). The second majority opinion, authored by Justice Breyer, severed the legislative provision that made the federal guidelines mandatory, rendering them merely advisory in nature. *Id.* at 245–46, 125 S.Ct. 738.

██ Pennsylvania's statutory sentencing scheme is indeterminate, advisory, and guided. In imposing a sentence, the judge is directed to give two numbers representing the minimum and maximum period of incarceration:

(a) General rule.-In imposing a sentence of total confinement the court shall at the time of sentencing specify any maximum period *up to the limit authorized by law* and whether the sentence shall be commenced in a correctional institution or other appropriate institution.

(b) Minimum sentence.-The court shall impose a minimum sentence of confinement which shall not exceed one-half of the maximum sentence imposed.

42 Pa.C.S. § 9756(a), (b) (emphasis added). In most cases, the defendant is eligible for parole release at the discretion of the Parole Board after the expiration of the minimum sentence. In no circumstance may the sentence imposed go beyond the statutory maximum sentence.

██ Pennsylvania has a guided sentencing system, requiring a judge to consider the guidelines promulgated by the Pennsylvania Commission of Sentencing in choosing a minimum sentence. The Legislature has provided that:

The court shall also consider any guidelines for sentencing adopted by the Pennsylvania Commission of Sentencing and taking effect pursuant to section 2155 (relating to publication of guidelines for sentencing). In every case in which the court imposes a sentence for a felony or misdemeanor, the court shall make as part of the record, and disclose in open court at the time of sentencing, a statement of the reason or reasons for the sentence imposed. In every case where the court imposes a sentence outside the sentencing guidelines adopted by the Pennsylvania Commission on Sentencing pursuant to section 2154 (relating to adoption of guidelines for sentencing) and made effective pursuant to section 2155, the court shall provide a contemporaneous written statement of the reason or reasons for the deviation

from the guidelines. Failure to comply shall be grounds for vacating the sentence and resentencing the defendant.

42 Pa.C.S. § 9721(b) [in relevant part].

The Sentencing Guidelines, located at 204 Pa.Code § 303 *et seq.*, recommend ranges of minimum sentences based on the type of offense, the defendant's prior criminal history, and a variety of aggravating and mitigating factors. The standard recommended minimum sentence is determined by the inter-section of the defendant's prior record score and the offense gravity score on the Basic Sentencing Matrix. 204 Pa.Code § 303.16. The Guidelines further recommend that if the court determines that aggravating or mitigating circumstances are present, it may impose a sentence that is a specified amount of time greater than the upper limit of the standard range or less than the lower limit of the standard range. 204 Pa.Code § 303.13.

It is well established that the Sentencing Guidelines are purely advisory in nature. As this Court explained in *Commonwealth v. Sessoms*, 516 Pa. 365, 532 A.2d 775, 780–81 (1987), the Guidelines do not alter the legal rights or duties of the defendant, the prosecutor or the sentencing court. The guidelines are merely one factor among many that the court must consider in imposing a sentence. *Sessoms*, 532 A.2d at 781. Consequently, this Court explained:

> The defendant has no "right" to have other factors take pre-eminence or be exclusive; therefore, to have the guidelines considered, whatever they may provide does not change his rights. Likewise, the prosecutor has no "right" to have a particular sentence imposed. Most important, the court has no "duty" to impose a sentence considered appropriate by the Commission. The guidelines must only be "considered" and, to ensure that such consideration is more than mere fluff, the court must explain its reasons for departure from them.

*Id.* Likewise, we explained in *Commonwealth v. Mouzon*, 571 Pa. 419, 812 A.2d 617, 621 (2002)(plurality), that despite the recommendations of the Sentencing Guidelines, "the trial

courts retain broad discretion in sentencing matters, and therefore, may sentence defendants outside the Guidelines." The only line that a sentence may not cross is the statutory maximum sentence. See *Mouzon*, 812 A.2d at 621 n. 4., *Commonwealth v. Saranchak*, 544 Pa. 158, 675 A.2d 268, 277 n.17.

As it is evident that Pennsylvania's Sentencing Guidelines are merely advisory, the United States Supreme Court's holding in *Booker* makes clear that they do not violate the Sixth Amendment. The Court in *Booker* explained, "[i]f the guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment." 543 U.S. at 233, 125 S.Ct. 738. Pennsylvania's Guidelines do just that. They set forth a series of recommendations that based on the type of crime, the defendant's criminal history, and the existence of any aggravating or mitigating factors, suggest a range of minimum sentences. As the range is merely a suggestion, it avoids the constitutional problems encountered by the sentencing schemes reviewed in *Booker* and *Blakely*. Thus, the maximum sentence for *Apprendi* purposes is the statutory maximum, not the maximum recommendation of the Sentencing Guidelines. Because the statutory maximum is the polestar for Sixth Amendment purposes, a judge may impose a sentence outside the Guidelines without unconstitutionally increasing the punishment for a crime based on judicially-determined facts as long as the maximum sentence imposed does not exceed the statutory limit.[4]

4. The Commonwealth argues that *Blakely* holds that the Sixth Amendment concerns outlined by *Apprendi* do not apply to indeterminate sentencing schemes, like Pennsylvania's. *See:* 542 U.S. at 308–09, 124 S.Ct. 2531. Commentators have suggested that the Court used the term "indeterminate" imprecisely. Steven L. Chanenson, *The Next Era of Sentencing Reform*, 54 Emory L.J. 377, 382 (2005); Jon Wool & Don Stern, *Aggravated Sentencing: Blakely v. Washington, Practical Implications for State Sentencing Systems*, 17 Fed.Sent.R. 60, fn. 7. As Pennsylvania's purely advisory sentencing guidelines pass constitutional muster under *Booker*, it is not necessary for this Court to inquire further into this matter.

As Appellant in this case was sentenced within the statutory maximum sentence provided by 18 Pa.C.S. § 106(b)(3), the fact that the trial court considered material not admitted in Appellant's plea in departing from the sentencing guidelines is constitutionally irrelevant. Thus, the judgment of sentence is affirmed.

Former Justice NEWMAN did not participate in the consideration or decision of this case.

Justice CASTILLE, SAYLOR, EAKIN and BAER and Justice BALDWIN join the opinion.