J-S70034-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DANIEL SOLER | |
| Appellant | No. 2073 EDA 2014 |

Appeal from the Judgment of Sentence March 14, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009434-2012

BEFORE:  DONOHUE, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.:          **FILED DECEMBER 02, 2015**

Daniel Soler appeals from the judgment of sentenced entered in the Court of Common Pleas of Philadelphia County following a jury trial[1] in which he was convicted of third-degree murder,[2] arson,[3] criminal conspiracy,[4]

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Mr. Soler was tried with his sister, co-defendant Jacqueline Soler, who was convicted of arson, criminal conspiracy, and hindering prosecuting.  Ms. Soler has filed a separate appeal at docket number 2005 EDA 2014.

[2] 18 Pa.C.S. § 2502(c).

[3] 18 Pa.C.S. § 3301(a)(1).

[4] 18 Pa.C.S. § 903.

possession of a firearm without a license[5] and by a prohibited person.[6]  After

our review, we affirm.

The trial court summarized the facts of this matter as follows:

On Saturday, March 31, 2012, Tanisha Carr contacted [Mr. Soler], with whom she had two children, in order to meet and talk about $500 which she had loaned [Mr. Soler].  Carr and [Mr. Soler] shared custody of their daughter, D.S.[,] and their son, D.S.J., who stayed with Carr during the week and with [Mr. Soler] over the weekends.  At approximately 10:30 p.m., before going to meet with Carr, [Mr. Soler] called his children into his room and stated that he would be going somewhere.  While [Mr. Soler] was talking with his children, D.S.J. reached into [Mr. Soler's] coat, which permitted D.S. to see a concealed gun.  [Mr. Soler] stated, "I love you no matter what happens," gave his children a hug and a kiss, and then left the house.

Carr had arranged to telephone her sister, Tamika McDuffie, upon arriving at the meet location, which she did at 11:43 p.m.  Upon calling McDuffie, Carr stated, "here comes Danny," and then left the phone active, permitting her sister to listen in on their conversation.  McDuffie was able to hear Carr state, in a scared tone, "where are we going?"  The last words McDuffie heard Carr state [were]:  "Never mind, I don't want the money, just give me my keys so I can go home."  Following this statement, the phone went dead and repeated calls by McDuffie were unanswered.  [Mr. Soler] and Carr got into an argument, at which point [Mr. Soler] "snapped," pulled out his gun, and shot Carr multiple times.  [Mr. Soler] then drove away, while Carr lay in the passenger seat dying.

Thereafter, [Mr. Soler] called his sister, co-defendant Jacqueline Soler ("Ms. Soler"), informing her that he had just killed a ["man"] and arranged to meet with Ms. Soler at their cousin

---

[5] 18 Pa.C.S. § 6106.

[6] 18 Pa.C.S. § 6105.

Freddie's[7] home.  [Mr. Soler] parked the vehicle with Carr's body at 4519 North 3rd Street, Philadelphia, which is a mixed commercial and residential area, at 12:30 a.m., April 1, 2012, and arrived at Freddie's home shortly thereafter.

While at Freddie's home, [Mr. Soler] repeatedly commented he had "fucked up" and that he was "not going to see [his] kids." [Mr. Soler] asked if Aura Bernard, Freddie's live[-]in girlfriend, had any gas, stating that he intended to burn the car to get rid of the evidence.  Bernard and Ms. Soler left the house and bought gas at the local 7-Eleven convenience store.  Upon their return, Bernard gave the gas to [Mr. Soler], who returned to the parked vehicle while everyone else remained at home.  [Mr. Soler] poured the gas on the car, on the floor of the car, and on Carr's body before using a lighter to light the gas.  [Mr. Soler] lit the fire at approximately 2:19 a.m.

Philadelphia Fire Department personnel arrived at the scene of the car fire at 2:28 a.m., approximately eight minutes after it was lit.  The fire had fully involved the interior passenger compartment and the force of the flame had blown out the vehicle's windows.  Upon extinguishing the fire, [firefighters found] Carr's body . . . slumped across the passenger seat, so badly burned that Fire Department officials could not tell her gender.  Subsequent investigation revealed that Carr had been shot three times in the torso and once in the chin.  Carr [had] died within two to three minutes.

At approximately 5:30 a.m., April 1, 2012, police contacted Carr's parents, informing them that Carr's burned vehicle had been found with a body inside.  Later that day, [Mr. Soler] talked with Carr's step-father, Joseph Coleman Jr., on the phone.  When Coleman informed [Mr. Soler] that Carr's body had been found, [Mr. Soler] responded, "what that got to do with me?" When Coleman confronted [Mr. Soler] about the $500 [Mr. Soler] owed Carr, [Mr. Soler] hung up the phone.

Following his arrest, [Mr. Soler] gave a statement to police, admitting that he had shot Carr multiple times [while] she was in the vehicle and that she was still breathing as he drove away. [Mr. Soler] further confessed to conspiring with Ms. Soler and

---

[7] Freddie's real name is Roberto Soler.

Bernard to dispose of Carr's body and that he did so using the gas that Ms. Soler and Bernard [had] purchased.

Trial Court Opinion, 3/9/15, at 2-4 (citations omitted).

Following trial, Mr. Soler was sentenced on March 14, 2014. Mr. Soler was sentenced to an aggregate sentence of 45 to 90 years' incarceration, including consecutive sentences of 20 to 40 years' incarceration for third-degree murder, 10 to 20 years' incarceration each for arson and conspiracy to commit arson, and five to ten years' incarceration for possession of a firearm by a prohibited person. Mr. Soler filed a timely post-sentence motion, which the court denied on June 23, 2014. This timely appeal followed.[8]

Mr. Soler raises one issue for our review:

Did the trial court err, and abuse its discretion, in imposing [a] consecutive aggregate sentence of 45 to 90 years['] incarceration in that said sentence was unreasonable, excessive, and an unwarranted upward departure from the applicable sentencing guidelines?

Brief for Appellant, at 2.

Mr. Soler's sole claim on appeal is a challenge to the discretionary aspects of sentencing. We note that an appellant is not entitled to review of

_____

[8] Mr. Soler initially failed to file a court-ordered concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court filed an opinion on September 23, 2014, noting that Mr. Soler had waived his claim by failing to file the statement. Thereafter, Mr. Soler filed a motion in this Court, requesting that the matter be remanded so that he could file a concise statement. The motion was granted on February 10, 2015, requiring Mr. Soler to file a statement within 21 days. Mr. Soler complied by filing his concise statement on March 3, 2015.

the discretionary aspects of sentencing unless he or she satisfies a four-part test:

> (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Caldwell**, 117 A.3d 763, 768 (Pa. Super. 2015) (en banc) (quoting **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011)).

Instantly, Mr. Soler filed a timely notice of appeal and preserved his issues in a post-sentence motion. Mr. Soler's brief includes a statement of the reasons relied upon regarding the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f).[9] Accordingly, we must determine whether

---

[9] The Commonwealth argues that Mr. Soler's Rule 2119(f) statement is defective because it does not immediately precede the argument portion of his brief and fails to indicate where his sentences fell in comparison to the sentencing guidelines, citing **Commonwealth v. Dodge**, 77 A.3d 1263, 1271 (Pa. Super. 2013) (noting disapproval of appellant's "failure to indicate where his sentences fell in the sentencing guidelines and what provision of the sentencing code was violated"). While Mr. Soler does not specifically state where each of his sentences fell in comparison to the guidelines, he indicates that his sentences for arson and conspiracy to commit arson exceeded the guidelines. Mr. Soler also notes a specific sentencing provision he believes the court violated and clearly indicates his argument that the imposition of consecutive sentences is excessive in light of the circumstances. Thus, we proceed to determining whether Mr. Soler raises a substantial question.

Mr. Soler presents a substantial question that the sentence he appeals from is not appropriate under the Sentencing Code.

Whether a substantial question has been raised is evaluated on a case-by-case basis. *Commonwealth v. Prisk*, 13 A.3d 526, 533 (Pa. Super. 2011). A substantial question will be determined to exist "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* In fashioning a sentence, the court "must consider the factors set out in 42 [Pa.C.S.] § 9721(b), that is, the protection of the public, gravity of offense in relation to impact on victim and community, and rehabilitative needs of the defendant. And of course, the court must consider the sentencing guidelines." *Caldwell*, *supra* at 768.

We note that "[a] court's exercise of discretion in imposing a sentence concurrently or consecutively does not ordinarily raise a substantial question." *Id.* at 769 (citing *Commonwealth v. Mastromarino*, 2 A.3d 581, 587 (Pa. Super. 2010)). However, a "critical distinction [exists] between a bald excessiveness claim based on imposition of consecutive sentences and an argument that articulates reasons why consecutive sentences in a particular case are unreasonable." *Dodge*, *supra* at 1270. Indeed, the latter case "**may** raise a substantial question". *Id.* (emphasis in original).

Here, Mr. Soler asserts that the imposition of consecutive sentences, including arson and conspiracy sentences exceeding the guidelines, combined with the sentencing court's failure to consider his rehabilitative needs raises a substantial question. We have held that a challenge to "consecutive sentences as unduly excessive, together with [a] claim that the court failed to consider [the] rehabilitative needs" of the appellant presents a substantial question. **Caldwell**, **supra** at 770. Thus, we conclude that Mr. Soler raises a substantial question.

We review a challenge to the discretionary aspects of sentencing that raises a substantial question to determine whether the trial court abused its discretion. **Id.**

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Id.** (quoting **Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014)).

We note that where the sentencing court reviewed a presentence report, the court is considered to have appropriately weighed the requisite sentencing factors. **Commonwealth v. Naranjo**, 53 A.3d 66, 72 (Pa. Super. 2012). The sentencing guidelines "are merely one factor among many that the court must consider in imposing a sentence" and are "purely

advisory in nature." ***Commonwealth v. Yuhasz***, 923 A.2d 1111, 1118 (Pa. 2007). Indeed, we "cannot disturb a sentence that exceeds the sentencing guideline recommendations unless it is unreasonable." ***Naranjo***, ***supra*** at 73 (citing 42 Pa C.S. § 9781(c)). Furthermore, an appellant is "not entitled to a volume discount for numerous and serious crimes." ***Caldwell***, ***supra*** at 772 (citing ***Commonwealth v. Mastromarino***, 2 A.3d 581, 587 (Pa. Super. 2010)).

Mr. Soler asserts that the sentencing court considered the impact of his crimes on the victims to the exclusion of considering his rehabilitative needs. He argues that "the sentence imposed was in reality a life sentence . . . without regard for how fulfilling the conditions of the sentence imposed would benefit the public and/or Mr. Soler." Brief for Appellant, at 10.

The record reveals that, contrary to Mr. Soler's assertions, the court took into account both the impact on the victims and Mr. Soler's rehabilitative needs. The court reviewed a presentence investigation report prior to sentencing. At the sentencing proceedings, Mr. Soler's counsel requested that Mr. Soler receive mental health treatment, vocational training, and assistance in obtaining his GED, as suggested in the report. The court agreed, stating, "I'll recommend these conditions to the Department of Corrections: That you earn your GED, that you receive vocational training, complete anger management counseling, that you receive mental health treatment and substance abuse treatment." N.T. Sentencing, 3/14/14, at 40. Thus, the court not only reviewed the

presentence report, indicating that the sentencing factors were properly weighed, *Naranjo*, *supra*, the court also granted Mr. Soler's requests regarding rehabilitative measures to take place during his incarceration.

Turning to the length of Mr. Soler's sentence, we note that Mr. Soler has a long history of arrests and convictions, including for violent crimes. This indicates that despite multiple opportunities to become rehabilitated, Mr. Soler has not been successful; rather, his violent behavior has increased. As the court stated in choosing to sentence Mr. Soler above the guidelines for arson and conspiracy to commit arson:

> You have a history of violence. You have a robbery conviction which I see in your record and the extensive nature of your record is taken into account by your prior record score, but in terms of aggravation, I do see that there is violence in your history.
>
> This is not a garden variety arson. The arson was to cover up a murder. That's not reflected in the guidelines. And for that reason I think a departure above the guidelines is appropriate on the arson charge and on the conspiracy to commit arson charge.
>
> It also is not a garden variety arson in that the guidelines don't take into account that you desecrated the body of the mother of your children when you burned up that car in order to protect yourself to destroy evidence. That's another factor that leads me to believe that a departure above the guidelines is appropriate on the arson charge and on the conspiracy to commit arson charge.

N.T. Sentencing, 3/14/14, at 39. Based upon the reasoning provided by the court, sentencing Mr. Soler beyond the guidelines for arson and conspiracy to commit arson was clearly not unreasonable. *Naranjo*, *supra*.

Finally, we turn to the imposition of consecutive sentences for Mr. Soler's crimes. The trial court indicated it would impose the sentences consecutively "to reflect the fact that [there] are separate crimes and to achieve an aggregate sentence that . . . is fair under all the circumstances because it's commensurate with the terrible crime [Mr. Soler] committed in this case." N.T. Sentencing, 3/14/14, at 41. Based upon the serious nature of Mr. Soler's actions and the multiple, separate crimes he committed, we discern no abuse of discretion in imposing the sentences consecutively. ***Caldwell***, ***supra***; ***see Mastromarino***, ***supra***, at 591 (consecutive sentences not imposed in error where sentencing court determined that charges represented separate, distinct wrongs and aggregate sentence was commensurate with culpability).

Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2015