J-S14021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES ROBERT STANDRIDGE | : | |
| | : | |
| Appellant | : | No. 1367 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 27, 2023
In the Court of Common Pleas of Clinton County
Criminal Division at No(s):  CP-18-CR-0000057-2023

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY PANELLA, P.J.E.:                **FILED: JULY 2, 2024**

James Robert Standridge appeals from the judgment of sentence entered in the Clinton County Court of Common Pleas following his open guilty plea[1] to two counts of aggravated cruelty to animals. On appeal, Standridge challenges the discretionary aspects of his sentence. We affirm.

The trial court summarized the facts of the case as follows:

> The victim in this case was a two-year old female pit bull terrier, formerly known as "Luna" and now known as "Lucky".

---

[1] We note the guilty plea hearing transcript does not appear in the certified record. As such, we cannot verify the factual basis for the plea. Generally, it is an appellant's responsibility to ensure the record certified on appeal is complete. **See Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006). However, it appears Standridge does not contest the trial court's recitation of facts; he only contests the court's use of those facts to support the sentence imposed. Accordingly, we do not find the transcript's absence from the record hampers our review and glean the facts from the record before us.

On January 21, 2023, Lucky was [Standridge]'s pet and was in the custody and care of [Standridge]. As of this date, [Standridge] also owned another dog. [Standridge]'s wife contacted him at his workplace and advised that Lucky had attacked his other dog in the living room and that there was blood in the living room. [Standridge] left work, came home, put Lucky's bark collar on her and crated her. [Standridge] then returned to work and contemplated his next move.

[Standridge] advised the court that on the date of the incident he was behind on his mortgage and car payments and felt that he had no other choice but "to do what I needed to do to protect my family."

[After returning home from work later that day,] [Standridge] placed Lucky in his car and drove her to a secluded, wooded area late at night and tied her up to a tree with her own leash. [Standridge] then fired three shots at her from a 9mm handgun, striking her twice. [Standridge] then noticed headlights in the area and left Lucky tied to the tree to die. Lucky defecated herself out of fear and struggled in the 2-foot of slack that she had in her leash. Lucky laid [ ] in the open … woods for six days in the January weather. At one point she was able to free herself from her leash and made it about 25-feet to lay down in some leaves until … a good Samaritan spotted her.

During the six days that she laid unprotected in the January weather, … she was in below freezing temperatures. The lows were in the 20's and there was snowfall on two of those days. Lucky suffered an additional loss of two toes from frostbite due to her open exposure. For six days she was [alone in the woods] without food or water. …

Lucky was taken to Dr. Andrew VanGorder for veterinarian care. In addition, to the missing toes, she had exposed bones on her left hind digits that were filled with maggots and dirt. She had a compound fracture of her left humorous. It was determined that Lucky had been struck by two bullets, one in her neck and a second in the hock of her hind limb. She had severe injuries to two of her limbs.

Lucky was hospitalized and an attempt was made to fix the fractured limb. Lucky was in significant pain and struggled to walk given the severe fracture of the weightbearing bone of the front

limb and the loss of toes on her hind limb. A rod was inserted but, unfortunately, the bone did not heal properly and the left limb was eventually amputated. During this time, Lucky was treated for pain as the smallest movements would lead to discomfort as she attempted to regain function.

[ ] Lucky was able to recover and now thrives on three limbs. It is believed that she is now pain free. She has since found a forever home …

Trial Court Opinion, 10/23/23, at 2-4.

On May 2, 2023, Standridge entered guilty pleas to Count 1: aggravated cruelty to animals—torture and Count 2: aggravated cruelty to animals—causing serious bodily injury. Sentencing was deferred for preparation of a pre-sentence investigation report ("PSI").

On June 27, 2023, the trial court sentenced Standridge to 12 to 84 months' incarceration on Count 1 and 18 to 84 months' incarceration on Count 2. The court imposed the sentences to run consecutively for an aggregate term of 30 to 168 months' incarceration. The court also imposed fines and restitution. Standridge filed a timely post-sentence motion to reconsider and modify sentence, which the court denied. This timely appeal followed.

In his sole issue, Standridge challenges the discretionary aspects of his sentence. "Generally, a plea of guilty amounts to a waiver of all defects and defenses except those concerning the jurisdiction of the court, the legality of the sentence, and the validity of the guilty plea." *Commonwealth v. Reichle*, 589 A.2d 1140, 1141 (Pa. Super. 1991) (citations omitted). "[T]he determination of whether discretionary aspects of sentencing may be

challenged after a guilty plea is entered depends upon the actual terms of the plea bargain, specifically, to what degree a sentence agreement has been reached." *Commonwealth v. Dalberto*, 648 A.2d 16, 18 (Pa. Super. 1994).

Where the plea agreement provides specific penalties, an appeal from a discretionary sentence will not stand; however, where the plea agreement provides for no sentencing restrictions, the entry of a guilty plea will not preclude a challenge to the discretionary aspects of sentencing. *See id.* at 20. Here, Standridge entered an open guilty plea that did not purport to limit the sentencing court's discretion in any way. Therefore, he may challenge the discretionary aspects of the sentence. *See id.*

We review discretionary sentencing challenges with great deference to the sentencing court:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Bullock*, 170 A.3d 1109, 1123 (Pa. Super. 2017) (citations and quotation marks omitted). However, "[a] challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

To invoke this Court's jurisdiction over this issue, Standridge must satisfy a four-part test:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

**Commonwealth v. Moury**, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Here, Standridge preserved his issue through a timely post-sentence motion to reconsider and modify his sentence and filed a timely appeal. Further, counsel has included the required Rule 2119(f) statement.

We therefore must examine Standridge's Rule 2119(f) statement to determine whether a substantial question exists. **See Commonwealth v. Tirado**, 870 A.2d 362, 365 (Pa. Super. 2005). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal, which are necessary only to decide the appeal on the merits." **Id**. (citation and emphasis omitted); **see also** Pa.R.A.P. 2119(f).

Standridge "must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." **McAfee**, 849 A.2d at 274 (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." **Tirado**,

870 A.2d at 365 (citation omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012) (citation omitted).

Standridge asserts the trial court "erred in imposing consecutive sentences at the top of the aggravated range and in doing so relied on factors that were already elements of the offenses, which had been taken into account by the Sentencing Commission in determining the offense gravity score for each offense." Appellant's Brief, at 15. This claim raises a substantial question for our review. *See Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009).

Preliminarily, we note the trial court reviewed a PSI prior to sentencing. Where the trial court had the benefit of reviewing a PSI, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure. Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

*Commonwealth v. Hallock*, 603 A.2d 612, 616 (Pa. Super. 1992) (citation omitted).

Further, it is well-established that Pennsylvania has an indeterminate guided sentencing scheme. *See Commonwealth v. Yuhasz*, 923 A.2d 1111, 1117 (Pa. 2007). The sentencing judge is required to consider the sentencing guidelines that have been adopted by the Pennsylvania Commission on Sentencing. *See* 42 Pa.C.S.A. § 9721(b). It is recognized however that "the Sentencing Guidelines are purely advisory in nature" and "are merely one factor among many that the court must consider in imposing a sentence." *Yuhasz*, 923 A.2d at 1118 (citation omitted). "[A] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." *Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

> It is impermissible for a court to consider factors already included within the sentencing guidelines as the *sole* reason for increasing or decreasing a sentence to the aggravated or mitigated range. Trial courts are permitted to use prior conviction history and other factors already included in the guidelines *if, they are used to supplement other extraneous sentencing information*.

*Id*. at 1275 (citation omitted) (emphasis in original).

Here, the trial court imposed consecutive sentences for an aggregate term of 30 to 168 months' incarceration. It is undisputed that these sentences are at the top of the maximum aggravated range of the sentencing guidelines.

The court's explanation for its sentence on the record was notably extensive. First, the court explicitly noted its consideration of the PSI, Standridge's version of the incident, the restitution claim by the SPCA, the summary report from the veterinarian who assisted in Lucky's recovery, the summary report from the shelter manager at the SPCA, and the letters and testimony submitted in support of Standridge. **See** N.T. Sentencing Hearing, 6/27/23, at 15-16.

The court then stated for the record the applicable sentencing guidelines, including Standridge's prior record score, the offense gravity scores, and the correlating standard range and aggravated range sentences. **See id**. at 16.

The court noted that Standridge is 34 years of age, is currently married, and has custody of his three minor children, in addition to taking care of two stepchildren in the residence. **See id**. at 17. The court also noted Standridge's history of abuse as a child and mental health concerns. **See id**.

Relevantly, after a comprehensive overview of the facts of the case and the court's findings and credibility determinations, **see id**. at 17-22, the court stated as follows:

> The [court] acknowledges that the sentencing commission suggests standard range guidelines took into [account] your prior record score, which is zero, and the gravity of the defined offense and the grading of the defined offense.
>
> The [court] does not believe the Commission's standard range took into account the extent and severity of this poor animal's suffering caused by her owner.

I also want to point out, Mr. Standridge, that your actions were not a mistake. What you did was intentional. You went back to work. You thought about it. You put Lucky in the car. You drove to a secluded spot. You tied her to a tree. You shot three times, striking her twice. Those actions do not constitute actions of a mistake. This was not an act done in just a moment. This is something that you thought about and planned. That poor dog suffered terribly for six days.

She's without a front leg for the rest of her life and that's because of the bullet that was put there by you. The amount of suffering mandates a sentence in the aggravated range. The Sentencing Commission could not have contemplated the fear, suffering, pain, and confusion that this poor dog has been forced to endure. Mr. Standridge, on January 21, 2023, you did not show Lucky any mercy; likewise, this [c]ourt will not show you the mercy that you now request.

*Id*. at 22-23.

The court stood by its decision to sentence in the aggravated range at the hearing on the post-sentence motion. Specifically, the court firmly repeated its belief that the legislature did not contemplate the facts of this case in defining the offense, including "[m]ultiple shots, January, dog's legs broken, dog lays out in the elements for six days. No water. No food. No shelter. Freezing weather. Toes freeze, have to be amputated." N.T. Post-Sentence Motion Hearing, 8/29/23, at 3; *see also id*. at 4 ("I don't hesitate for a second to tell you that I think that what happened in this case went way beyond what was contemplated by the legislature.").

Finally, in its opinion on appeal, the trial court justified its aggravated sentence as follows:

- 9 -

In ten years on the Bench, this is the first time the [c]ourt has sentenced in the aggravated range. [Standridge]'s acts as previously described and the pain they caused on this helpless dog was so heinous and so disgusting that the [c]ourt believed it had no alternative. [Standridge]'s acts were inhuman, sadistic, cold blooded and cruel.

This Court acknowledged that the Sentencing Commission's suggested standard range sentences took into consideration [Standridge]'s prior record, the gravity of the defined offense and the grading of the defined offense.

The Court did not believe that the Commission's standard ranges took into account the extent and severity of Lucky's suffering caused by [Standridge].

[Standridge]'s actions were not done in the moment. They were contemplated. [Standridge]'s actions were not a mistake. [Standridge] deliberated on his next move after he returned to work. Only then did he return to tie his helpless pet to a tree, shoot at her three times hitting her twice and running, leaving her to die when he saw headlights.

Lucky lost her front leg but still carries one of the bullets that [Standridge] shot into her.

The amount of suffering by this poor dog mandates a sentence in the aggravated range. The Sentencing Commission could not have contemplated the fear, suffering, pain and confusion that Lucky was forced to endure.

In **Commonwealth v Duffy**, 491 A.2d 230 (Pa. Super. 1985), the Superior Court held the [c]ourt can consider the characteristics of the defendant's victim and the nature of the crime when justifying sentencing in an aggravated range. The nature of the victim in this instance was a poor, helpless dog tied to a tree facing an owner armed with a 9mm handgun. The nature of the crime can only be described as heinous, inhuman, sadistic, cold blooded and cruel.

In the instant matter, this [c]ourt's decision regarding the aggravation of the sentence should not be disturbed absent a manifest abuse of discretion. **Commonwealth v Stewart**, 867 A.2d 589, 593 (Pa. Super. 2005).

It is respectfully submitted that the circumstances of this particular case as previously outlined are atypical of the crime for which [Standridge] was convicted and, therefore, the [c]ourt was justified in imposing a more severe punishment.

Trial Court Opinion, 10/23/23, at 4-5.

We conclude the record belies Standridge's claims. The sentencing court did not rely on any one factor as the sole reason for imposing aggravated range sentences. While the trial court did consider the torture imposed by Standridge on Lucky, the court explicitly reasoned that the particular facts of this case were well beyond that contemplated by the legislature in defining the offense. That the court may not exclusively rely on the general presence of torture in sentencing in the aggravated range does not mean that it must ignore the particular circumstances of the torture presented in a case. The court clearly found that the facts of torture in this case went well beyond a typical case and thoroughly explained its reasoning throughout these proceedings.

As we find the court relied on permissible factors in sentencing Standridge in the aggravated range, we conclude his contention that the court impermissibly relied on elements already included in the offense is without merit. The circumstances are certainly sufficient to justify the trial court's aggravated sentence. We conclude the trial court did not abuse its discretion, and therefore Standridge's argument merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: <u>07/02/2024</u>