J-S45021-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER ANTHONY GIERMANSKI | : | |
| | : | |
| Appellant | : | No. 655 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 19, 2025
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-CR-0001409-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PETER A. GIERMANSKI | : | |
| | : | |
| Appellant | : | No. 656 MDA 2025 |

Appeal from the Judgment of Sentence Entered February 19, 2025
In the Court of Common Pleas of Lackawanna County Criminal Division at
No(s): CP-35-MD-0000419-2023

BEFORE:   STABILE, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:                    **FILED: FEBRUARY 19, 2026**

In these consolidated appeals, Peter Anthony Giermanski (Appellant)

appeals from the judgment of sentence imposed following his guilty pleas to

---

[*] Retired Senior Judge assigned to the Superior Court.

one count of stalking[1] and seven counts of indirect criminal contempt of a protection from abuse (PFA)[2] order or agreement[3] ("ICC-PFA"). Appellant claims the trial court abused its sentencing discretion by imposing a manifestly excessive and unreasonable aggregate sentence. Additionally, Appellant's public defender counsel, Donna M. DeVita, Esquire (Counsel), has filed an application to withdraw from representation and accompanying brief in accordance with *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009). After careful review, we grant Counsel's application to withdraw and affirm Appellant's judgment of sentence.

Appellant's convictions implicate his conduct relative to his ex-wife, J.B. ("victim" or "J.B."), in violation of active PFA orders protecting J.B. from Appellant. Specifically, between October 2021 and May 2023, Appellant, while

---

[1] 18 Pa.C.S.A. § 2709.1(a)(2).

[2] *See* Protection From Abuse Act, 23 Pa.C.S.A. §§ 6101-6122.

[3] 23 Pa.C.S.A. § 6114(a).

incarcerated, mailed numerous letters[4] to his and J.B.'s two minor children that indirectly communicated disparaging and threatening content to J.B.[5]

In July 2023, the Commonwealth charged Appellant, via criminal information at docket CR-1409-2023 (Case 1409), with one count of stalking.

---

[4] As Appellant conceded, "when these letters were written[,]" he was "serving a one (1) to two (2) year state prison sentence, followed by three (3) years of special probation" **in a separate criminal case that involved the same victim**. Sentencing Memorandum, 2/18/25, at 1 (punctuation and capitalization modified).

[5] As J.B. explained in her testimony at Appellant's sentencing hearing in these matters,

> [a]s part of [her and Appellant's child] custody order dated December of 2021, the only communication [Appellant] has with our children is via letter writing. These letters are to be read by me so that I can provide background information on content[.] …. [Appellant] now chooses to use the only communication he has with the children to continue his abusive behavior. …. Having left an abusive marriage, I have been a long-time target of [Appellant's] verbal abuse. …. [In his letters, Appellant] speaks of how it's beneficial for other inmates to see what [the victim] looks like and [describes] the details of a murder coverup of a woman that wanted to get divorced. He speaks about … the networking he's done with criminals, [and raises] false accusations attacking [the victim's] character as he accuses me of alcoholism and being abusive to our children. …. [Appellant] sees me as his problem, and I believe he is attempting to punish me for leaving him over seven years ago. His intent is to create fear and target me with his threatening and intimidating comments within the letters he sends to our children ….

N.T., 2/19/25, at 3-4; **see also id.** at 5 (J.B. asserting that "[s]ince 2018, [Appellant has] pleaded no-contest to five PFA violations"). Further, the judge who imposed Appellant's sentences in Case 419 and Case 1409, the Honorable Michael J. Barrasse, also presided over Appellant's prior criminal cases involving the same victim. **See** Trial Court Opinion, 7/10/25, at 13.

Separately, at docket CR-419-2023 (Case 419), the Commonwealth charged Appellant with 34 counts of ICC-PFA.

On October 7, 2024, Appellant, after completing a written guilty plea colloquy,[6] entered open guilty pleas, at Case 419 and Case 1409, to one count of stalking and seven counts of ICC-PFA, respectively. The trial court accepted the pleas as knowingly, voluntarily, and intelligently tendered, deferred sentencing, and ordered the preparation of a pre-sentence investigation (PSI) report.

Prior to sentencing, on February 18, 2025, Appellant filed a sentencing memorandum. Appellant pointed out that under the applicable sentencing guidelines, "the standard range … for the [s]talking offense is [restorative sanctions]-3" months of incarceration. Sentencing Memorandum, 2/18/25, at 2 (unpaginated) (emphasis omitted). Appellant emphasized his prior record score was "0" and maintained that he was "a model inmate … with no misconducts[.]" *Id.* Appellant urged the trial court to "impose a time-served sentence with an appropriate period of time on probation[.]" *Id.*

The trial court described what next transpired in its Pa.R.A.P. 1925(a) opinion:

On February 19, 2025, both [Case 419 and Case 1409] proceeded to a sentencing hearing. At that hearing, the Commonwealth introduced the victim, … who provided a statement to the [trial] court regarding her relationship with Appellant, the circumstances

---

[6] The transcript of Appellant's guilty plea hearing is not contained in the certified record.

surrounding [Case 419 and Case 1409], and the impact Appellant's actions made upon her. *See* N.T., 2/19/25, at 2-8. Importantly, [the trial] court notes, as [the victim] indicated, Appellant [previously] engaged in similar conduct [directed toward the victim, akin to] … the charges in [Case 419 and Case 1409,] since approximately 2018. *Id.* at 5. Specifically, and upon review of Appellant's criminal history, in 2018, Appellant amassed three separate cases related to charges of contempt for PFA violations, which were resolved via pleas of *nolo contendere*. Further, in March of 2021, Appellant was found guilty of [ICC-PFA] for alleged PFA violations. Finally, in August of 2021, Appellant entered a plea of guilty to one count of stalking[,] graded as a misdemeanor of the first degree. [The trial] court notes that the victim in each of these cases was the same victim as in [the instant] … matters – [J.B.].

Following [J.B.'s statement], the Commonwealth's attorney addressed the court and supplemented [J.B.'s] statement. The Commonwealth noted that it [previously had] attempted to provide Appellant an opportunity to correct his behavior as it related to the underlying PFA violations. Specifically, the Commonwealth indicated that it held in abeyance[] the [ICC-PFA] matters related to violations of the PFA [order] alleged at the time. It also offered Appellant [the opportunity] to resolve those contempt matters through participating in the Lackawanna County House Arrest Program; however, [the prosecutor] stated that Appellant failed to refrain from engaging in harassing conduct toward [the victim].[7] *See id.* at 9.

Prior to imposition of sentence, both Appellant's attorney and Appellant addressed the court. Appellant stated … that he accepted responsibility for his actions and indicated that he has since remained employed [in prison], and participated in programs offered to him while incarcerated, so as to aid him in changing his behavior.

_____

[7] Additionally, the prosecutor stated at sentencing, "I've been here a long time. This is one of the top five red flag cases. I'm really concerned for [J.B.'s] safety. I'm concerned for the safety of the community." N.T., 2/19/25, at 9.

Trial Court Opinion, 7/10/25, at 3-4 (footnote added; some punctuation, capitalization, and citation formatting modified).

The trial court continued, explaining that

upon imposing … sentence, [the trial] court stated [to Appellant] the following in regard to the sentence related to the stalking and [ICC-PFA] … charges:

[Appellant], the court has thoroughly reviewed the [PSI] report[8] and your attorney's sentencing memorandum, and both the aggravating and mitigating factors in here, and quite frankly, the court finds that the aggravating factors far outweigh any mitigation, and that the aggravating factors … are one of the worst that I've seen in over 30 years. And [I] just want you to think about the charges, contempt and continued contempt year after year, even when you were sentenced to state prison. There[ are] various reasons for sentencing. One is rehabilitation, which I am a strong advocate of, and believe in, that can be [appropriate] for certain people. However, you've demonstrated that rehabilitation is not any road that you wanted to go down[, and] continued criminal contempts that have gone on for years ….

The court is, therefore, in regard to the stalking count [at Case 1409], [] going to sentence you, outside of the guidelines,[9] [to] two to five years in state prison

_____

[8] The PSI report is not contained in the record.

[9] The trial court detailed the applicable sentencing guidelines in its opinion:

Appellant, at the time of the imposition of his sentence, had a prior record score of zero (0). The minimum standard range sentence of the Sentencing Guidelines relative to [Case] 1409 – stalking, [was] restorative sanctions to three (3) months [of] incarceration, with an aggravated range minimum sentence of six (6) months [of] incarceration, and a maximum of sixty (60) months [of] incarceration. As it relates to … [Case] 419 – [ICC-PFA] …, the

*(Footnote Continued Next Page)*

> based upon all the reasons that were put forth by the
> Commonwealth and the victim's statement, as well as
> a review of the [PSI report].

N.T., 2/19/25, at 19-20 [(footnotes added; some punctuation modified)].

> In sum, [the trial] court imposed the following sentence upon Appellant:
>
> [Case] 1409:
>
> > Count 1: stalking – two (2) years to five (5) years['] incarceration;
>
> [Case] 419:
>
> > Count 1 through Count 7: [ICC-PFA] – six (6) months['] incarceration on each count, to be served consecutively to all other charges.

> ***Id.*** at 20. [The trial] court explained that the sentence would consist of "two to five years plus three and a half years" [of] incarceration and ordered Appellant to have "[n]o contact with the victim in any manner, shape or form." ***Id.***

Trial Court Opinion, 7/10/25, at 4-5 (some punctuation and capitalization modified).

On February 28, 2025, Appellant timely filed a motion for reconsideration of sentence. Appellant asserted that

> the sentence imposed is harsh and extreme due to the circumstances. Furthermore, [Appellant] believes that the

---

> maximum sentence is delineated as six (6) months [of] incarceration.

Trial Court Opinion, 7/10/25, at 13; ***see also*** 23 Pa.C.S.A. § 6114(b)(1)(A) (authorizing a sentence of imprisonment of "up to six months" for an ICC-PFA conviction).

[separate] sentence[s] should run concurrent based on the event being the same criminal episode. Both [Case 1409 and Case 419] result from the same fact pattern.

Motion for Reconsideration of Sentence, 2/28/25, ¶¶ 6-7 (formatting modified); *see also id.* ¶ 8 (asserting the trial court did "not fully and completely take[] into account" the fact that Appellant "is a product of particular circumstances and conditions of environment"). Appellant pointed out that the sentence imposed for stalking "fell well outside of the Pennsylvania Sentencing Guidelines as it was quadruple[] the aggravated range of six (6) months." *Id.* ¶ 4 (some capitalization modified). The trial court denied Appellant's motion for reconsideration on April 17, 2025.[10]

On May 22, 2025, Appellant, through Counsel, timely filed separate notices of appeal at Case 1409 and Case 419,[11] in compliance with *Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018) (requiring appellants to file separate notices of appeal when "a single order resolves

---

[10] On July 10, 2025, the trial court filed a corrective order for the sole "purpose of … correct[ing] a discrepancy in the application of time served" in connection with Appellant's sentence in Case 1409. Corrective Order, 7/10/25, at 1 n.1; *see also id.* at 1 (trial court clarifying that its "order is an administrative correction and does not modify the disposition"). Specifically, the court ordered that Appellant "shall receive 387 days of credit for time previously incarcerated" in connection with Case 1409. *Id.* at 1; *see also* Motion for Reconsideration of Sentence, 2/28/25, ¶ 5 (Appellant requesting credit for time served).

[11] This Court *sua sponte* consolidated the appeals. *See* Pa.R.A.P. 513 (governing consolidation of appeals).

issues arising on more than one docket"). Appellant and the trial court have complied with Pa.R.A.P. 1925.

On September 15, 2025, Counsel filed in this Court her **Anders** brief and a separate application to withdraw as counsel. By an order entered on October 22, 2025, this Court stated, in response to *pro se* correspondence from Appellant, that he was permitted to file a response to the **Anders** brief within 30 days of our order. Order, 10/22/25.

Appellant timely filed a *pro se* Response to the **Anders** brief on November 5, 2025,[12] challenging the competency of Counsel's representation and asserting Counsel (1) met with Appellant in person on July 15, 2025, and stated to him, "I am not going to risk my reputation with the court to fight for your case"; and (2) "cited out[-]of[-]date case law from 1978 in her [**Anders**] brief on [Appellant's] behalf." Response, 11/5/25. Appellant further asserted he is incarcerated, has limited access to the prison law library, and "lack[s] the legal knowledge to effectively defend myself in these two cases." **Id.**

We initially address Counsel's petition to withdraw before reaching the substantive issues raised in the **Anders** brief. **See Commonwealth v. Strasser**, 134 A.3d 1062, 1065 (Pa. Super. 2016) ("[W]e do not consider the merits of an issue raised in an **Anders** brief without first reviewing a request to withdraw"). Counsel seeking to withdraw pursuant to **Anders** must satisfy

---

[12] The Commonwealth did not answer Appellant's Response.

J-S45021-25

certain procedural and substantive requirements. ***Commonwealth v. Tejada***, 176 A.3d 355, 358 (Pa. Super. 2017). Procedurally, counsel must:

> 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the ***Anders*** brief to the appellant; and 3) advise the appellant that he or she has the right to retain private counsel or raise additional arguments that the appellant deems worthy of the court's attention.

***Commonwealth v. Gabra***, 336 A.3d 1052, 1056 (Pa. Super. 2025) (citation omitted).

> Substantively, counsel must file an ***Anders*** brief, in which counsel
>
> (1) provide[s] a summary of the procedural history and facts, with citations to the record; (2) refer[s] to anything in the record that counsel believes arguably supports the appeal; (3) set[s] forth counsel's conclusion that the appeal is frivolous; and (4) state[s] counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

***Santiago***, 978 A.2d at 361.

Instantly, Counsel filed an ***Anders*** brief and a separate application to withdraw as counsel. In the latter document, Counsel determined that "Appellant's appeal is without merit" and that his allegations of error were frivolous. Application to Withdraw, 9/15/25, ¶ 5. Additionally, Counsel indicates that she notified Appellant of her request to withdraw, furnished him with copies of the application to withdraw and ***Anders*** brief, and advised Appellant of his right to retain new counsel or proceed *pro se* to raise any claims he deems worthy of this Court's attention. ***Id.*** ¶¶ 3, 4 (citing Ex. A

- 10 -

(Counsel's letter to Appellant dated Sept. 15, 2025)).[13]   Accordingly, Counsel has satisfied the procedural requirements of **Anders**.   **Gabra**, 336 A.3d at 1056.

We next determine whether Counsel's **Anders** brief meets the requirements set forth in **Santiago**, **supra**.  Counsel's brief details the history of the case, with citation to the record.  **Anders** Brief at 6-9.  Additionally, Counsel identifies four issues that could arguably support Appellant's appeal, discusses relevant legal authority, and explains Counsel's reasons for determining that each issue lacks merit and is frivolous.  **Id.** at 4, 12-22.  Accordingly, Counsel has complied with the requirements of **Santiago** and **Anders**.

We next address the issues presented in the **Anders** brief, and conduct an independent review of the record to determine if the appeal is, in fact, without merit and wholly frivolous.  **See Commonwealth v. Dempster**, 187 A.3d 266, 272 (Pa. Super. 2018) (*en banc*) ("part and parcel of **Anders** is our Court's duty to review the record to insure no issues of arguable merit have been missed or misstated.").

The **Anders** brief presents four issues for our review:

A.  Whether the sentences imposed are excessive, and contrary to the fundamental norms underlying the sentencing process in this Commonwealth?

___

[13] Counsel has attached to her application to withdraw a copy of the letter she sent to Appellant informing him of his rights, as required under **Commonwealth v. Millisock**, 873 A.2d 748, 751 (Pa. Super. 2005).

- 11 -

B. Whether the trial court committed an error of law and/or an abuse of discretion when it imposed an incarceration sentence of 24 to 60 months, which is above the guidelines' aggravated sentence range on the stalking offense, and maximum 6 months['] incarceration sentences on each of the [ICC-PFA] offenses?

C. Whether the trial court erred and abused its discretion when imposing sentences for the following reasons:

   1. The court failed to consider Appellant's remorse and acceptance of responsibility; and

   2. The court focused only on punishment of [] Appellant without any consideration of his rehabilitative needs?

D. Whether the trial court erred and/or committed an abuse of discretion when it ordered that the sentences imposed in [Case] 419 be served consecutively to each other and to the stalking offense [sentence] imposed in [Case] 1409, rather than being served concurrently?

*Anders* Brief at 4 (capitalization and punctuation modified).

As each of Appellant's issues challenge the discretionary aspects of his sentence, we address them together. We are mindful, however, that "[c]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right."[14] *Commonwealth v. Lawrence*, 313 A.3d 265, 284 (Pa. Super. 2024) (citation and brackets omitted). Rather,

[t]o invoke this Court's jurisdiction when challenging the discretionary aspects of a sentence, an appellant must satisfy a four-part test: (1) the appellant preserved the issue by raising it at the time of sentencing or in a post-sentence motion; (2) the

---

[14] It is established that "when a defendant pleads guilty without an agreement as to the sentence, he may challenge the discretionary aspects of the sentence imposed." *Commonwealth v. Brown*, 240 A.3d 970, 972 (Pa. Super. 2020).

appellant filed a timely notice of appeal; (3) the appellant set forth in his brief a concise statement of reasons relied upon for the allowance of his appeal pursuant to Pennsylvania Rule of Appellate Procedure 2119(f); and (4) the appellant raises a substantial question for review.

**Commonwealth v. Davis**, 341 A.3d 808, 812-13 (Pa. Super. 2025) (footnote and some citations omitted).

Instantly, Appellant preserved his challenge in a motion for reconsideration of sentence and timely filed notices of appeal. In addition, Appellant's brief contains the requisite Rule 2119(f) statement. **See Anders** Brief at 12-13. Accordingly, we examine the 2119(f) statement to determine whether Appellant has presented a substantial question that the sentence imposed is inappropriate under the Sentencing Code. **See Commonwealth v. Radecki**, 180 A.3d 441, 468 (Pa. Super. 2018) (stating an appellate court "cannot look beyond the statement of questions presented and the prefatory Rule 2119(f) statement to determine whether a substantial question exists." (citation and brackets omitted)).

Appellant asserts in his Rule 2119(f) statement that

the trial court abused its discretion when it imposed harsh and excessive sentences, beyond the aggravated sentence range on the stalking offense and to the maximum sentence on the each of the seven (7) counts of [ICC-PFA]. [Appellant] asserts that his actions did not justify the lengthy incarceration sentences imposed, which were [] the maximum allowed.

Appellant further believes that the trial court arrived at a manifestly unreasonable decision and abused its discretion when it ordered that the [separate sentences imposed in Case 419 and Case 1409] be served consecutively. He argues that the 5.5 to

- 13 -

8.5 years['] aggregate incarceration sentence was unjustified and certainly was not warranted.

*Anders* Brief at 12-13. Appellant additionally claims that the trial court improperly "focused on the offenses only" and "failed to consider" mitigating circumstances and the statutory criteria of 42 Pa.C.S.A. § 9781(d).[15] *Anders* Brief at 13.

This Court has stated that

[t]he determination of what constitutes a substantial question must be evaluated on a case-by-case basis. A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

*Commonwealth v. Thompson*, 333 A.3d 461, 467 (Pa. Super. 2025) (internal citations and quotation marks omitted).

_____

[15] Section 9781(d) provides as follows:

**(d) *Review of record.*** — In reviewing the record the appellate court shall have regard for:

**(1)** The nature and circumstances of the offense and the history and characteristics of the defendant.

**(2)** The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

**(3)** The findings upon which the sentence was based.

**(4)** The guidelines promulgated by the commission.

42 Pa.C.S.A. § 9781(d).

It is well settled that the imposition of consecutive as opposed to concurrent sentences is solely within the sound discretion of the trial court, and does not alone present a substantial question. ***Commonwealth v. Morrobel***, 311 A.3d 1153, 1157 (Pa. Super. 2024) (stating that "in most cases, the court's exercise of discretion in imposing consecutive as opposed to concurrent sentences is not viewed as raising a substantial question" (citation and internal quotation marks omitted)). "[T]he imposition of consecutive, rather than concurrent sentences, may raise a substantial question in only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." ***Commonwealth v. Lamonda***, 52 A.3d 365, 372 (Pa. Super. 2012) (*en banc*).

Moreover, this Court has held that "[a] claim that the trial court focused exclusively on the seriousness of the crime while ignoring other, mitigating circumstances … raises a substantial question." ***Commonwealth v. Knox***, 165 A.3d 925, 929-30 (Pa. Super. 2017) (citing ***Commonwealth v. Caldwell***, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*)); ***see also Commonwealth v. Harvard***, 64 A.3d 690, 701 (Pa. Super. 2013) (same).

Under the circumstances of this case, we conclude Appellant's claim raises a substantial question. ***Caldwell***, 117 A.3d at 770 (holding that "an excessive sentence claim—in conjunction with an assertion that the [trial] court failed to consider mitigating factors—raises a substantial question.");

***Knox***, 165 A.3d at 929-30. Accordingly, we review the merits of Appellant's challenge to his sentence.

Our standard of review of a discretionary sentencing challenge is well settled: "Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion." ***Commonwealth v. Reid***, 323 A.3d 26, 30 (Pa. Super. 2024) (citation omitted); ***see also Commonwealth v. King***, 182 A.3d 449, 454 (Pa. Super. 2018) ("The standard employed when reviewing the discretionary aspects of sentencing is very narrow."). "A finding by an appellate court that it would have reached a different result than the trial court does not constitute a finding of an abuse of discretion. Where the record adequately supports the trial court's reasons and factual basis, the court did not abuse its discretion." ***Commonwealth v. Hall***, 345 A.3d 332, 336 (Pa. Super. 2025) (citation omitted).

Our Supreme Court has explained,

[t]he reason for this broad discretion and deferential standard of appellate review is that the sentencing court is in the best position to measure various factors and determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed.

***Commonwealth v. Pasture***, 107 A.3d 21, 27 (Pa. 2014) (citations and quotation marks omitted); ***see also Commonwealth v. Walls***, 926 A.2d 957, 961 (Pa. 2007) (same).

Sentencing courts are vested with "broad discretion in choosing the range of permissible confinements that best suits a particular defendant and the circumstances surrounding his crime." ***Commonwealth v. Hill***, 66 A.3d 365, 370 (Pa. Super. 2013) (citation omitted). "It is well established that the Sentencing Guidelines are purely advisory in nature. …. The guidelines are merely one factor among many that the court must consider in imposing a sentence." ***Commonwealth v. Yuhasz***, 923 A.2d 1111, 1118 (Pa. 2007) (internal citations omitted); ***see also Commonwealth v. Holiday***, 954 A.2d 6, 13 (Pa. Super. 2008) (explaining that the sentencing guidelines "have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors" (citation omitted)).

In every case where "a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence." ***Commonwealth v. Shull***, 148 A.3d 820, 835-36 (Pa. Super. 2016) (citation omitted); ***see also Yuhasz***, 923 A.2d at 1118 ("The guidelines must only be 'considered' and, to ensure that such consideration is more than mere fluff, the court must explain its reasons for departure from them." (citation omitted)). When doing so,

> a trial judge … [must] demonstrate on the record, as a proper starting point, its awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as it also states of record the factual basis and specific reasons which compelled it to deviate from the guideline range.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1264 (Pa. Super. 2012) (citation and brackets omitted).

The Sentencing Code directs a trial court to follow the general principle that "the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S.A. § 9721(b); *see also Commonwealth v. Bankes*, 286 A.3d 1302, 1307 (Pa. Super. 2022) (stating that at sentencing, "[t]he trial court is required to consider the particular circumstances of the offense and the character of the defendant. The trial court should refer to the defendant's prior criminal record, age, personal characteristics, and potential for rehabilitation." (citation omitted)).

Further, it "is well settled that imposition of consecutive rather than concurrent sentences rests within the trial court's discretion." *Commonwealth v. Foust*, 180 A.3d 416, 434 (Pa. Super. 2018) (citation and internal quotation marks omitted). An appellate court will not disturb consecutive sentences unless the aggregate sentence is "grossly disparate to

the appellant's conduct" or "viscerally appear[s] as patently unreasonable."

***Commonwealth v. Gonzalez-Dejusus***, 994 A.2d 595, 599 (Pa. Super. 2010). This Court has stated that

> [a]lthough Pennsylvania's system stands for individualized sentencing, **the court is not required to impose the "minimum possible" confinement**. Generally, Pennsylvania law affords the sentencing court discretion to impose its sentence concurrently or consecutively to other sentences being imposed at the same time or to sentences already imposed.

***Commonwealth v. Brown***, 249 A.3d 1206, 1216 (Pa. Super. 2021) (citation omitted; emphasis added). "An appellant is not entitled to a 'volume discount' on his multiple convictions by the imposition of concurrent sentences." ***Lawrence***, 313 A.3d at 286 (citation and brackets omitted).

Instantly, Appellant claims the trial court abused its discretion in imposing manifestly unreasonable and excessive sentences in Case 419 and Case 1409, and in ordering each separate sentence to run consecutively. ***See Anders*** Brief at 14-22.[16] Appellant points out that the sentence imposed on his stalking conviction exceeded the aggravated range of the applicable sentencing guidelines, and that the consecutive sentences imposed on each of his seven ICC-PFA convictions were the maximum permitted. ***Id.*** at 15. Appellant contends "the trial court focused only on the offenses resulting in

---

[16] As explained *supra*, though Appellant filed a *pro se* Response to the ***Anders*** brief, it pertains solely to the propriety of Counsel's request to withdraw from representation and does not address the substantive merits of Appellant's challenge to his sentence. ***See generally*** Response, 11/5/25.

sentences that are excessive and contrary to the fundamental norms underlying the sentencing process in this Commonwealth." *Id.* at 14. According to Appellant, "the trial court failed to sufficiently identify on the record what in [Appellant's] history or characteristics necessitated the sentences. … [T]he trial court focused on punishment only when it imposed excessive incarceration sentences." *Id.* at 16-17; *see also* at 18 (asserting the trial court "failed to consider… [Appellant's] rehabilitative needs," his prior record score of "0," and expression of remorse at sentencing). Appellant maintains

> [h]e is aware that he had sent letters to his children that were interpreted by [the victim] as threatening, but he asserts that he did not come into physical contact with [the victim] or threaten[] her in any way or attempt[] to contact her directly. He did not take any action towards her.

*Id.* at 15.

Instantly, the trial court opined it properly exercised its discretion in imposing reasonable sentences upon Appellant under the circumstances:

> As mentioned above, [the trial] court imposed the following sentence upon Appellant:
>
> [Case] 1409:
>
>> Count 1: Stalking – two (2) years to five (5) years [of] incarceration;
>
> [Case] 419:
>
>> Count 1 through Count 7: [ICC-PFA] – six (6) months [of] incarceration on each count, to be served consecutively to all other charges.

- 20 -

N.T. [(]Sentencing[)], 2/19/2025, p. 20. Thus, the above sentencing resulted in an aggregate sentence of two (2) years to five (5) years [of] incarceration, followed by an additional three and one half (3.5) years [of] incarceration regarding Appellant's charges related to the PFA violations.

Prior to sentencing, [**the trial**] **court carefully reviewed the PSI** [**report**], the applicable standard Sentencing Guidelines, the circumstances surrounding Appellant's life, criminal history, and the underlying facts of the offenses. Additionally, [**the trial**] **court h**[**a**]**d familiarity with Appellant via multiple previous appearances before** [**the**] **court regarding previous criminal matters involving the same victim.**

[The trial] court imposed sentences upon Appellant that took into account Appellant's prior history and dealings with the criminal justice system, the facts and circumstances of the instant cases, the nature and gravity of the offenses, as well as the testimony provided at Appellant's sentencing hearing on February 19, 2025. **Although the sentence imposed related to …** [**Case**] **1409,** [**stalking**]**, was outside the guidelines, it was within the lawful maximum, and neither harsh nor excessive** based upon the reasons for such sentence as laid out on the record at the sentencing hearing.

Trial Court Opinion, 7/10/25, at 13-14 (emphasis added; some punctuation and capitalization modified).

Our review of the record supports the trial court's foregoing rationale, and we agree with its determination. We discern no abuse of the court's ample sentencing discretion when imposing consecutive carceral sentences on each of Appellant's convictions, which were neither excessive nor contrary to the fundamental norms underlying the sentencing process. As the trial court had the benefit of a PSI report, it is presumed that the court "was aware of the relevant information regarding [Appellant's] character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v.***

*Conklin*, 275 A.3d 1087, 1098 (Pa. Super. 2022) (citation omitted). "[W]here the court has been so informed, its discretion should not be disturbed." *Commonwealth v. Ventura*, 975 A.2d 1128, 1135 (Pa. Super. 2009).

Further, regarding the sentence imposed for Appellant's stalking conviction, this Court has explained that a sentence in excess of the standard guidelines range may "be justified to the extent that the individual circumstances of [the] case are atypical of the crime for which [the a]ppellant was convicted, such that a more severe punishment is appropriate." *Commonwealth v. Fullin*, 892 A.2d 843, 848 (Pa. Super. 2006). Such is the case here, where Appellant, over the course of multiple years, incessantly violated PFA orders prohibiting him from contacting the victim, evidencing his refusal or inability to comply with court orders and refrain from criminal conduct. *See* N.T., 2/19/25, at 19-20 (trial court finding that Appellant, by his conduct, "demonstrated that rehabilitation is not any road that you wanted to go down", and that he "continued [committing] criminal contempts that have gone on for years."). Moreover, the trial court stated on the record its reasons for deviating above the sentencing guidelines. *See*, *e.g.*, *id.* at 19 (trial court "find[ing] that the aggravating factors far outweigh any mitigation, and that the aggravating factors … are one of the worst that I've seen in over 30 years."); *see also Commonwealth v. Fowler*, 893 A.2d 758, 767 (Pa. Super. 2006) ("The sentencing judge can satisfy the requirement that reasons for imposing sentence be placed on the record by indicating that he or she has

been informed by the [PSI] report; thus properly considering and weighing all relevant factors." (citation omitted)).

Finally, the trial court acted well within its discretion in ordering all sentences to run consecutively to each other; Appellant is not entitled to a "volume discount" on his multiple offenses. *Lawrence*, 313 A.3d at 286. In conclusion, we decline Appellant's invitation to disturb his sentences, as his aggregate sentence is neither "grossly disparate" to his conduct nor "viscerally appear[s] as patently unreasonable." *Gonzalez-Dejusus*, 994 A.2d at 599.

Based upon the foregoing, we agree with Counsel's assessment that Appellant's challenge to the discretionary aspects of his sentence is frivolous.[17] Moreover, our independent review discloses no non-frivolous issues Appellant could raise on appeal that would entitle him to relief. *See Dempster*, 187 A.3d at 272. Accordingly, we grant Counsel's application to withdraw and affirm Appellant's judgment of sentence.

---

[17] To the extent Appellant asserts claims of Counsel's ineffectiveness, *see*, *e.g.*, Response, 11/5/25, such claims should be reserved for collateral review through a timely petition filed pursuant to the Post Conviction Relief Act. *See* 42 Pa.C.S.A. §§ 9541-9546.

Application to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary


Date: 02/19/2026