J-S08005-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CUTHBERT ANDERSON | : | |
| | : | |
| Appellant | : | No. 1358 EDA 2025 |

Appeal from the Judgment of Sentence Entered August 9, 2024
In the Court of Common Pleas of Bucks County
Criminal Division at No(s):  CP-09-CR-0005484-2023

BEFORE:  PANELLA, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY PANELLA, P.J.E.:                    **FILED MAY 5, 2026**

Cuthbert Anderson appeals from the judgment of sentence entered in the Bucks County Court of Common Pleas on August 9, 2024. On appeal, Anderson challenges the discretionary aspects of his sentence, an evidentiary ruling by the court, and the sufficiency of the evidence. We affirm.

The trial court summarized the factual and procedural history of this matter as follows:

> On September 6, 2023, Officers Tyler Smith (["]Officer Smith") and William Beck ("Officer Beck") of the Bensalem Township Police Department were dispatched to the Acme supermarket located at 1336 Bristol Pike in response to a report of a male individual causing a disturbance. Upon arrival at the scene, Officer[] Smith and Officer Beck (together the "Officers") made contact with the individual, later identified as Anderson.
>
> Upon further investigation, the Officers ascertained that Anderson was the subject of active warrants issued out of Philadelphia and Bucks County. The Officers attempted to place Anderson under arrest. Anderson did not comply with the Officers' commands and

actively resisted arrest. During the struggle, Officer Beck drew his department-issued taser. Anderson proceeded to knock the taser from Officer Beck's possession and then took control of the taser. Officer Beck was able to remove the taser from Anderson's possession by knocking it out of his hand onto the ground. Anderson continued to resist arrest, striking Officer Beck in the face and attempted to remove Officer Smith's firearm from its holster. Officer Beck regained possession of his taser and successfully deployed it on Anderson, who was then subdued and taken into custody without further incident.

Trial Court Opinion, 7/31/25, at 1-2.

Anderson was arrested and charged with Counts 1 and 2: aggravated assault—attempts to cause or causes serious bodily injury to designated individuals, Counts 3 and 4: aggravated assault—attempts to cause or causes bodily injury to designated individuals, Counts 5 and 6: aggravated assault—attempts to cause or causes bodily injury with a deadly weapon, Counts 7 and 8: aggravated assault—fear of imminent serious bodily injury to designated individuals, Counts 9 and 10: disarming a law enforcement officer, Counts 11 and 12: simple assault, Counts 13 and 14: resisting arrest, and Counts 15 and 16: simple assault.[1]

On June 6, 2024, following a trial, a jury found Anderson guilty of Counts 3, 4, 6, 7, 8, 10, and 16, and not guilty on Counts 1, 2, 5, and 9. Sentencing was deferred for preparation of a presentence investigation report ("PSI").

---

[1] 18 Pa.C.S.A. § 2702(a)(2), 18 Pa.C.S.A. §2702(a)(3), 18 Pa.C.S.A. §2702(a)(4), 18 Pa.C.S.A. §2702(a)(6), 18 Pa.C.S.A. §5104.1(a), 18 Pa.C.S.A. §2701(a), 18 Pa.C.S.A. §5104, 18 Pa.C.S.A. §2701(a)(3), respectively.

On August 9, 2024, the trial court sentenced Anderson to concurrent terms of 5 to 10 years' incarceration for Counts 3, 4, 7, and 8, to be followed by 3 years' probation for Count 10. No further penalty was imposed on the remaining counts. The aggregate sentence was therefore 5 to 10 years' incarceration, to be followed by three years' probation, with credit for time served. Anderson filed a timely post-sentence motion for reconsideration of sentence, which the court denied. After his appellate rights were reinstated *nunc pro tunc*, Anderson filed the instant timely appeal.

Anderson raises the following issues on appeal:

I. Did the trial court abuse its discretion in sentencing [Anderson] above the Sentencing Guidelines, and in its failure to properly consider, and give the appropriate weight to [Anderson]'s mental illness and how his mental illness played a part in the crimes to which [Anderson] was convicted?

II. Did the trial court err in permitting Officer William Beck to testify as to the possible dangers from the deployment of a Taser and to present what was essentially expert testimony being elicited to establish the serious bodily injury element of the Aggravated Assault offenses charged … ?

III. Was the evidence presented at trial insufficient to establish any of the Aggravated Assault charges upon which [Anderson] was convicted, as there was insufficient evidence of any injury to the police, any legitimate concern or fear that injury would occur, or any conduct on the part of [Anderson] that could reasonably be interpreted by the jury as an attempt to do anything other than flee from the police?

Appellant's Brief, at vii (trial court's responses omitted).

In his first issue, Anderson argues the trial court abused its discretion by sentencing him above the sentencing guidelines and by failing to properly

consider and give appropriate weight to his mental illness in sentencing. Anderson concedes this claim raises a challenge to the discretionary aspects of sentence. "A challenge to the discretionary aspects of a sentence must be considered a petition for permission to appeal, as the right to pursue such a claim is not absolute." *Commonwealth v. McAfee*, 849 A.2d 270, 274 (Pa. Super. 2004) (citation omitted).

An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42. Pa.C.S.A. § 9781(b).

*Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted; brackets in original).

Here, Anderson preserved his issue through a timely post-sentence motion for reconsideration of sentence and filed a timely appeal. Further, counsel has included the required Rule 2119(f) statement.

We therefore review the Rule 2119(f) statement to determine if Anderson has raised a substantial question. *See Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005). "Our inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying the appeal,

which are necessary only to decide the appeal on the merits." *Id*. (citation and emphasis omitted); *see also* Pa.R.A.P. 2119(f).

Anderson "must show that there is a substantial question that the sentence imposed is not appropriate under the Sentencing Code." *McAfee*, 849 A.2d at 274 (citation omitted). That is, "the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process." *Tirado*, 870 A.2d at 365 (citation omitted). "Additionally, we cannot look beyond the statement of questions presented and the prefatory 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Provenzano*, 50 A.3d 148, 154 (Pa. Super. 2012) (citation omitted).

Anderson asserts the trial court erred by sentencing him to the statutory maximum without considering mitigating evidence and without placing any meaningful explanation on the record for the aggravated sentence. This claim raises a substantial question for our review. *See Commonwealth v. Garcia-Rivera*, 983 A.2d 777, 780 (Pa. Super. 2009).

Preliminarily, we note the trial court reviewed a PSI prior to sentencing. Where the trial court had the benefit of reviewing a PSI, we must

> presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors. A pre-sentence report constitutes the record and speaks for itself. In order to dispel any lingering doubt as to our intention of engaging in an effort of legal purification, we state clearly that sentencers are under no compulsion to employ checklists or any extended or systematic definitions of their punishment procedure.

> Having been fully informed by the pre-sentence report, the sentencing court's discretion should not be disturbed. This is particularly true, we repeat, in those circumstances where it can be demonstrated that the judge had any degree of awareness of the sentencing considerations, and there we will presume also that the weighing process took place in a meaningful fashion. It would be foolish, indeed, to take the position that if a court is in possession of the facts, it will fail to apply them to the case at hand.

**Commonwealth v. Hallock**, 603 A.2d 612, 616 (Pa. Super. 1992) (citation omitted).

Further, it is well-established that Pennsylvania has an indeterminate guided sentencing scheme. **See Commonwealth v. Yuhasz**, 923 A.2d 1111, 1117 (Pa. 2007). The sentencing judge is required to consider the sentencing guidelines that have been adopted by the Pennsylvania Commission on Sentencing. **See** 42 Pa.C.S.A. § 9721(b). It is recognized however that "the Sentencing Guidelines are purely advisory in nature" and "are merely one factor among many that the court must consider in imposing a sentence." **Yuhasz**, 923 A.2d at 1118 (citation omitted). "[A] trial court judge has wide discretion in sentencing and can, on the appropriate record and for the appropriate reasons, consider any legal factor in imposing a sentence in the aggravated range." **Commonwealth v. Shugars**, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation omitted).

> It is impermissible for a court to consider factors already included within the sentencing guidelines as the *sole* reason for increasing or decreasing a sentence to the aggravated or mitigated range. Trial courts are permitted to use prior conviction history and other factors already included in the guidelines *if, they are used to supplement other extraneous sentencing information*.

- 6 -

*Id*. at 1275 (citation omitted) (emphasis in original).

Here, the trial court imposed concurrent sentences for an aggregate term of 5 to 10 years' incarceration. It is undisputed that the aggregate sentence is above the aggravated range of the sentencing guidelines.

The court's explanation for its sentence on the record was notably extensive. First, the court noted its consideration of the facts of the case and the offenses committed. *See* N.T., Sentencing Hearing, 8/9/24, at 30 (noting it found the facts to be "extremely disturbing" especially considering the Officers were just trying to do their job to protect all citizens). The court noted its consideration of the danger Anderson put people in that night. *See id.* at 31 (noting Anderson not only put the Officers at risk, but also the people in the store, the store manager, and shoppers in the parking lot). The court acknowledged that Anderson had been trying to better himself, but noted that he had only been doing so since being in prison. *See id.*

The court next stated its consideration of Anderson's criminal record from the PSI, which spanned numerous years. *See id.* at 31-32. The court stated its consideration of the sentencing guidelines which it had summarized earlier in the hearing. *See id.* at 32. The court also indicated its consideration of the Officer's impact statements. *See id.*

The court acknowledged Anderson's need for rehabilitation and mental health treatment, and indicated it was glad Anderson was getting that treatment, including medications, while in prison. *See id.* at 33. However, the

court emphasized that his current acceptance of treatment did not excuse the underlying conduct. *See id.* The court then stated as follows:

> Now, I'm also considering the recommendations from the PSI from Probation, and I will say that I do think that that seems a little lengthier than I think is necessary in your case. Because all of these charges that you have can be stacked one on top of the other, and that's what they're recommending here is that we do run your sentences consecutive to one another, which would keep you incarcerated longer than I think is necessary in this case, but not much longer than I think is necessary.

*Id*. at 33-34. The court then imposed the sentence as stated above.

Anderson's counsel acknowledged that the court "likely took a totality into effect in imposing these concurrent sentences" but since the total sentence did go above the aggravated range, counsel asked the court if it was incorporating the reasons already given as the basis for an aggravated range sentence. *See id.* at 36.

The court explained it was "going above the aggravated range because all of these sentences could be consecutive to one another. But by doing them concurrent, I'm going above the aggravated range so that we maintain the sentence where I want it to be. I think it's less than what's being recommended by Probation, but I think it's appropriate given all of the factors here." *Id.* at 36-37. The court further noted its consideration of misconducts while in the correctional facility on these charges, the seriousness of the convictions, and the threats and potential harm to not only the Officers, but the public, as reasons for an aggravated sentence. *See id.* at 37.

As we find the court relied on permissible factors in sentencing Anderson in the aggravated range, we conclude the circumstances are sufficient to justify the trial court's aggravated sentence. We conclude the trial court did not abuse its discretion, and therefore Anderson's argument merits no relief.

In his second issue, Anderson challenges the admission of Officer Beck's testimony regarding the risks associated with deploying a taser. Specifically, Anderson characterizes this testimony as improperly admitted expert testimony used to establish the element of serious bodily injury for the aggravated assault charges.

Our standard of review for the admission of evidence is well-settled:

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. [A]n evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict.

***Commonwealth v. Manivannan***, 186 A.3d 472, 479-480 (Pa. Super. 2018) (citation and internal quotation marks omitted).

Pennsylvania Rule of Evidence 702, which governs the admission of expert testimony, provides:

**Rule 702. Testimony by Expert Witnesses**

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge is beyond that possessed by the average layperson;

(b) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; and

(c) the expert's methodology is generally accepted in the relevant field.

Pa.R.E. 702.

In contrast, Pennsylvania Rule of Evidence 701 governs opinion testimony by lay witnesses:

**Rule 701. Opinion Testimony by Lay Witnesses**

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Here, Officer Beck testified about his ten years of law enforcement experience and the type of trainings he had received, including ongoing weapon proficiency. ***See*** N.T., 6/5/24, at 57. This training involved replicating real-life encounters to determine when lethal force is necessary or not. ***See***

*id.* at 58. Officer Beck testified about his ongoing proficiency training on "less lethal" forms of equipment, including mace and a taser. ***See id.*** at 60-61 (Officer Beck testifying that this training goes "hand in hand" with the firearms training). Officer Beck expanded on his training specifically regarding a taser, including practical uses and function checks. ***See id.*** at 61. Officer Beck explained the operation and deployment of a taser, specifically explaining the best practice as follows:

> The first way, which is the best practice, typically would be to deploy the prongs. They are two barbed prongs in the front of the Taser. When the safety is taken off and the weapon becomes activated, the prongs would fire from the front of the weapon, and due to the barbs, they would stick in the subject at an angle. And, obviously, the further the spread would be the best, because electric travels at a current. It would go from one probe to the other, and the wider spread the more effect it would have on the person's muscular system.

***Id.*** at 62. Officer Beck explained that they perform function checks on their tasers because the taser is a "less-than-lethal option" so they do not have to go for a firearm unless it's a last resort. ***Id.*** at 64. While a taser is "less lethal", Officer Beck testified that deploying one is still dangerous because it "causes very intense stress on the body or the subject that you are using it on [depending] on their age, their health conditions, things of that nature." ***Id.*** Officer Beck explained that there are "preferred striking areas" to deploy a taser on a subject's body, such as the "upper chest to just below the belt line," as well as "areas that we would like to avoid altogether because you could cause serious bodily injury." ***Id.*** at 64-65. When asked why he would prefer

to avoid deploying a taser above the chest area, the following pertinent

exchange occurred:

Q. Why not above the chest area?

[Officer Beck]: Actually, your head and face are a lot more sensitive. If a subject was struck in the eyes with a Taser–

MR. DOWNS: Objection, Your Honor […] my objection is based upon the fact that I think the Commonwealth is trying to start a line of questioning that I don't believe the officer is going to be qualified to testify to. He's about to give, basically, medical testimony about the possible dangers of this Taser[…]he's had training on how to use it and deploy it, but he's not a doctor. He's not a qualified party to be able to give what is, I believe, being called for expert testimony in regards to the effects.

MR. GANNON: Your Honor, he's being asked about that. He's been asked about the danger, which is a common sense argument involving probes. There is a use of force that specifically states that he is trained on to not aim at the head and to explain why. It is also probative because it goes towards the charges of fear of serious bodily injury, because when he is struck in the face with the Taser it is active and he, I believe, would testify [] that if it was utilized on his face he could suffer serious bodily injury.

[…] It's not an expert opinion. It is common sense and it goes towards many of the charges in this instance.

THE COURT: I don't think it's expert testimony. I think it is based on his experience, his training, and he is simply explaining to the jury why you aim for certain parts of the body. So the objection is going to be overruled.

*Id.* at 65-66. Officer Beck was subsequently asked to complete his answer, to

explain why you would not want to deploy a taser above the shoulders or

upper chest area. ***See id.*** at 68. Officer Beck explained that a taser's "darts

deploy at a pretty rapid pace and they could cause vision loss. You could lose

an eye, you could lose a tooth, things of that nature[… The taser's probes]

have sharp tips with a barb, almost like the end of a fishing hook, which allows the prong to stay inside the person's skin or clothing." ***Id.*** at 69. Officer Beck testified that he has been trained to never aim above the shoulders. ***See id.***

A review of the record shows that Anderson's objection was based on the assertion that Officer Beck was not qualified to testify about the possible dangers and effects of being hit with a taser.

We cannot say that Officer Beck offered any scientific, technical, or medical specialized knowledge. Officer Beck simply explained that it is dangerous to deploy a taser at someone's face because of the sharp prongs. It is fairly common-sense that a sharp prong deployed at a face has the potential to cause injury such as loss of vision or teeth. Officer Beck's testimony to this effect was rationally based on his own experience having ongoing training regarding when and how to a taser should be used. Accordingly, we find the trial court properly exercised its discretion in permitting Officer Beck to testify regarding the risks associated with taser use.

In his final issue, Anderson challenges the sufficiency of the evidence supporting his aggravated assault charges. Specifically, Anderson argues there was insufficient evidence of any injury to the police, any legitimate concern or fear that injury would occur, or any conduct on Anderson's part that could reasonably be interpreted by the jury as an attempt to do anything other than flee from the police.

In reviewing sufficiency challenges, our standard of review is deferential to the fact finder:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2010) (citation and brackets omitted).

> In pertinent part, a person is guilty of aggravated assault if he:
>
> (3) attempts to cause or intentionally or knowingly causes bodily injury to [a police officer] in the performance of duty;
>
> (4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;
>
> …

(6) attempts by physical menace to put [a police officer], while in the performance of duty, in fear of imminent serious bodily injury;

18 Pa.C.S.A. § 2702(a)(3), (4), and (6). Under any of these subsections, actual injury is not required; rather an "attempt" to cause either bodily injury or serious bodily injury is sufficient. **See id.** "Bodily injury" is defined as an "[i]mpairment of physical condition or substantial pain." **Id.** § 2301. "Serious bodily injury" is defined as "[b]odily injury which created a substantial risk of death or which causes serious, permanent disfigurement of the function of any bodily member or organ." **Id.** "An intent ordinarily must be proven through circumstantial evidence and inferred from acts, conduct or attendant circumstances." **Commonwealth v. Fortune**, 68 A.3d 980, 984 (Pa. Super. 2013) (*en banc*) (citation omitted).

Anderson does not dispute that the pertinent subsections apply to the Officers, or that neither of the Officers sustained actual bodily injury or serious bodily injury. Anderson only asks us to "assess the adequacy of the Commonwealth's proof that [Anderson] attempted to cause such injury or to place [the Officers] in fear thereof." Appellant's Brief, at 20.

Anderson argues that he was simply trying to resist arrest because he did not want to be handcuffed. We find this argument to be baffling. It is unlikely that anyone being arrested *wants* to be handcuffed. That does not justify someone attempting to grab an officer's gun or taser in order to avoid handcuffs. This would lead to absurd and dangerous results.

While Anderson may have been attempting to flee from the Officers, the jury was free to believe that Anderson's violent behavior demonstrated an intent to cause bodily injury to the Officers in his attempt to flee. The evidence established that Anderson, during a lawful encounter and arrest, resisted apprehension by engaging in a violent struggle with the Officers, requiring multiple officers to subdue him. Officer Beck and Officer Smith testified to specific actions by Anderson which they reasonably interpreted as an imminent threat of bodily injury. **See** N.T., 6/5/25, at 91-101, 174-187. As stated above, the evidence showed that Anderson did not simply try to run from the officers, but actively attempted to gain control of the taser and Officer Smith's firearm. The Officers both testified credibly that they feared for their own lives and each other's lives during the encounter with Anderson. **See** Trial Court Opinion, 7/31/25, at 16 (finding the Officers testified credibly). Accordingly, the jury was free to find that Anderson attempted by physical menace to put the Officers in fear of imminent serious bodily injury.

When viewing the evidence in the light most favorable to the Commonwealth, we find the evidence was sufficient to convict Anderson of the aggravated assault offenses. As none of Anderson's issues merit relief, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>5/5/2026</u>